Clarence L. Atkinson and Harriet Gloria Atkinson v. Commissioner.
Atkinson v. Commissioner
Docket No. 58110.
United States Tax Court
T.C. Memo 1957-191; 1957 Tax Ct. Memo LEXIS 59; 16 T.C.M. (CCH) 865; T.C.M. (RIA) 57191; October 7, 1957
*59 Morris M. Grupp, Esq., Mills Tower Building, San Francisco, Calif., and Leon Schiller, Esq., for the petitioners. Thomas M. Mather, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $124.72 in the petitioners' income tax for 1951. Issues presented for decision are the correctness of the respondent's action in disallowing (1) a deduction of $95 taken for depreciation on an automobile, (2) a deduction of $220 taken for casualty insurance, and (3) a deduction of $124.35 taken for California State sales tax. Findings of Fact The petitioners are husband and wife with residence and mailing address at Box 70, Route 1, Fort Bragg, California. They were married in 1951 and during that year lived in Mendocino, California. They filed their joint Federal income tax return for 1951 with the collector for the first district of California. For the first 3 months of 1951, Clarence L. Atkinson (sometimes hereinafter referred to as the petitioner) was employed by Union Lumber Company and worked in Fort Bragg, California, which is 12 miles from Mendocino, California. Petitioner sought living accommodations *60 in Fort Bragg for himself, his wife, and his brother, who was about 16 years of age and who was living with them, but was unable to find any suitable accommodations there. For the last 9 months of 1951 the petitioner worked for California Western Railroad as a brakeman. Except for a total of about 4 weeks during the last 9 months of 1951, the petitioner reported for duty at the railroad company's station in Fort Bragg. He usually reported about 5:30 a.m. However, on some occasions he was called by telephone and told to report earlier or later than 5:30 a.m. From Fort Bragg the petitioner made a run of about 40 miles to Willits, California, arriving there around 7:00 p.m. After a lay-over in Willits of from 8 to 15 hours, he made a return run to Fort Bragg after which he went to his home in Mendocino. The petitioner made three round trips a week between Fort Bragg and Willits. For a total of 4 weeks during some undisclosed times during the last 9 months of 1951, the petitioner was employed on a work train and hauled rock from Willits to Clare Mill, California. On these occasions the railroad company took the petitioner by automobile from Fort Bragg to Willits where he stayed at night. *61 On these occasions the petitioner worked 7 days a week. Neither Union Lumber Company nor California Western Railroad furnished petitioner transportation between Mendocino and Fort Bragg during the times he was employed by them. Nor was any public transportation available between those points. At some undisclosed time in November 1951, the petitioner purchased an automobile at a price of $1,750. The purchase was made on the installment plan. Neither the amount of the down payment, if any, nor the due date, nor amount of the first or any subsequent installment is shown. The petitioner used the car to drive from his home to Fort Bragg to report for work. When he was away on a run to Willits and when he was spending the night in Willits, the car remained in Fort Bragg until his return there when he used it to return to his home. The petitioner also used the car during weekends for personal purposes. During 1951 the petitioner paid $130 for casualty insurance on the above-mentioned automobile. The period covered by the insurance, whether 1 year, 2 years, or longer, is not disclosed. The petitioners paid California State sales tax of $50 in 1951. Opinion The petitioners contend *62 that in the situation presented it was necessary for petitioner Clarence L. Atkinson to use automotive equipment to travel between his home in Mendocino and Fort Bragg where he reported for work as a railroad brakeman; that the use for such purpose of the automobile purchased in November 1951 constituted its use in Atkinson's trade or business and caused the depreciation of, and the cost of casualty insurance on, the automobile to be deductible as ordinary and necessary business expenses. Charles Crowther, 28 T.C. - (filed Sept. 30, 1957), involved the question of whether automobile expenses incurred by the taxpayer as a result of his use of his automobile to travel between his home and his place of employment were deductible as business expenses. Although, as here, public transportation was not available and living accommodations for the taxpayer and his family at or near the place of his employment were not available, it was held that the automobile expenses were not business expenses but were personal expenses and as such were not deductible. We think the holding there is applicable here and accordingly sustain the respondent's action in disallowing the deductions taken for depreciation *63 of, and cost of the casualty insurance on, the automobile. In addition to testifying to the purchase in November 1951 of an automobile at a price of $1,750, Atkinson also testified to the purchase in 1951 of furniture at a price of about $600 and of clothing at a price of about $400. Although so testifying, he did not state the amount, if any, of California State sales tax paid during 1951 with respect to the purchase of any of the foregoing, or any other items. Nor did petitioners offer in evidence any records respecting sales tax paid. In such a state of the record we are unable to find that sales tax in the amount deducted, $124.35, was paid during 1951. However, we are satisfied from the evidence that petitioners paid some sales tax in 1951. Applying the rule of , we have found that petitioners paid California State sales tax of $50 in that year. In their petition the petitioners have assigned certain errors and made certain allegations of fact, all of which the respondent has denied in his answer, and on brief have advanced certain contentions challenging the propriety of the administrative policy and procedure employed *64 by respondent prior to his determination of the deficiency here involved and challenging the propriety of his motives in making such determination. We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence of record, the correctness of the respondent's determination of the deficiency here involved. However, we are without jurisdiction to consider and determine the propriety of the administrative policy and procedures the respondent employed prior to making such determination or to consider and determine the propriety of his motives in making such determination. Charles Crowther, supra. Decision will be entered under Rule 50.